IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN CROWNOVER, | ) |
| | ) |
| Plaintiff, | ) 2:06-cv-783 |
| v. | ) |
| | ) |
| SHRIVER CONTRACT SERVICES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is the MOTION FOR SUMMARY JUDGMENT *(Document No. 26),* with brief in support, filed by Defendant Shriver Contract Services ("Shriver"). Plaintiff, Robin Crownover, has filed a response (*Document No. 33*), and the motion is ripe for disposition.

Factual and Procedural Background

Plaintiff asserts claims for wrongful termination, disparate pay and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 955. The relevant facts are straightforward. Shriver employs approximately 125-130 bus drivers and provides transportation services to schools. Plaintiff drove a bus for Shriver, on and off, for nearly twenty-five years. During the 2005-2006 school year, Crownover drove a mini-bus, which had capacity for 29 students. Plaintiff is one of five drivers employed by Shriver who has a Class C license, which limits the weight of the vehicle she is eligible to drive. Plaintiff was born in 1957, and was 47

years old at the time of the events at issue. A majority of Shriver's drivers are over age 40.[1]

Crownover's regular duties included one run on Mondays and two runs the remainder of the week. Randy Shriver testified that drivers' pay is primarily based on the length of the run, the number of runs, the district and the size of the bus. There are no written policies. Crownover was unhappy with her pay. Although no other driver earned more total income than Crownover, several drivers made more money per run. For the 2005-2006 school year, Crownover received a $1 raise for her Monday run as compared to the prior year and after she complained in October 2005, she received another $1 raise for her Monday run.

In June 2005, Crownover was involved in a car accident while driving her personal vehicle. The accident occurred when Plaintiff, while driving at less than the posted speed limit in clear conditions, crested a hill and impacted a car that was stopped in the road without a turn signal. In July 2005, she was convicted of careless driving as a result of this incident and PENNDOT assessed three points on her driving record. Exhibit K. Plaintiff contends that her brakes failed, that they were subject to a recall, and that the driver of the other car was also found guilty of careless driving.

Shriver's commercial vehicle insurance policy is subject to renewal annually. The insurance carrier is Selective Insurance Company ("Selective"). In September 2005, Selective began its annual review of all Schriver bus drivers, including a review of motor vehicle and operator records. Selective notified ESS Insurance ("ESS"), the local agent, that Crownover was to be excluded from Shriver's policy coverage. Selective also sought the exclusion of Louis

---

[1] Shriver claims that the figure is 80%, but Plaintiff notes that the Driver Information Sheet lists 156 names, which is more than the existing workforce, presumably because former employees have not been removed from the list.

Rondinelli, who had been convicted of speeding for driving 81 mph in a 55 mph zone. *See* Exhibit L (9/27/05 email noting "I will require AP300 for Robin Sue Crownover and Louis V. Rondinelli."). On November 8, 2005, Shriver learned that Selective had requested that Crownover and Rondinelli be deleted from the policy. Chip Echnoz, an employee of ESS, sent Randy Shriver an email offering to fight the deletion request. Subsequently, ESS contacted Selective, which reversed its decision concerning Rondinelli. Viewing the record in the light most favorable to Plaintiff, the Court will assume that a similar request was not made with respect to Crownover. Shriver did not have any direct contact with Selective regarding the proposed exclusions.

On November 11, 2005, ESS requested a formal letter from Selective regarding exclusion of Crownover as a driver. A followup email explained: "I guess the insured wants to dot his "I's" and cross his "t's" with this employee." On November 22, 2005, Selective provided a formal letter. On November 23, 2005, Chip Echnoz sent a letter to Shriver, advising that:

> Unfortunately, Robin Sue Crownover's record was blemished to the point that the Selective Insurance Company desires Ms. Crownover to be deleted as a driver due to her unacceptable motor vehicle report. Enclosed please find form AP300 which will serve as a driver exclusion form. Please sign the form after advising Ms. Crownover that she is no longer eligible to operate a Shriver Contract Services vehicle. We apologize for the inconvenience but as you are aware, insurance underwriting requirements are very strict in conjunction with school bus liability operations.

On December 12, 2005, Crownover submitted an EEOC claim of age discrimination, alleging that from September-December 2005, she had been underpaid in an effort to get her to quit. Plaintiff admits that she was not harassed in any way between the filing of the EEOC complaint and her termination. The record reflects that Crownover received two $1 raises for her

3

Monday run during this period, as compared to the prior year. Plaintiff filed a subsequent EEOC complaint in January 2006, alleging retaliation.

On December 22, 2005, Shriver sent Crownover a letter seeking information concerning the accident. Crownover asserts that she did not receive this letter until December 29, 2005. On December 23, 2005, Crownover's bus was taken from her, supposedly for maintenance. On December 28, 2005, Randy Shriver informed Crownover by letter and by telephone that she was being terminated. The letter stated:

> As per my letter dated December 22, 2005 and my conversation with you today concerning your conviction on July 18, 2005 of "reckless driving," I have no choice but to sign the exclusion form required by our insurance company and terminate your employment as a school bus driver. Shriver Contract Services cannot operate or fulfill its obligations to transport school students without insurance on our drivers. The termination is effective immediately.

During the phone call, Crownover had explained that the conviction was for "careless" as opposed to "reckless" driving. Crownover denies receipt of the termination letter. The same day, Shriver signed the AP300 exclusion form and terminated Crownover's employment. Had he not signed the form, Shriver's entire insurance policy would have been in danger of non-renewal by Selective. Both parties agree that Shriver's bus drivers cannot drive a school bus without insurance coverage.

After Plaintiff's termination, Sandy Early took over that route for two months, at which time it was assigned to Gordon Clark. After Clark's resignation in June 2006, the route was assigned to Paula Miller. Early (DOB 9/22/56) is older than Crownover (DOB 8/29/57), but both Clark and Miller are younger than age 40.

Standard of Review

>Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:
>
>[Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

>The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Legal Analysis

Age discrimination claims are analyzed under the familiar McDonnell-Douglas burden-shifting framework. To establish a prima facie case of age discrimination, Plaintiff must show: (1) that she is in the protected class, i.e., over 40 years old; (2) that she is qualified for the position; (3) that she suffered an adverse employment action; and (4) that she was replaced by a sufficiently younger person to create an inference of discrimination. *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002). If Plaintiff can make out a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action, and if so articulated, the burden shifts back to Plaintiff to demonstrate that the employer's stated reason was pretextual. The same legal standards govern the ADEA and PHRA claims which will be addressed collectively. *Glanzman v. Metropolitan Mgt. Corp.*, 391 F.3d 506, 509 (3d Cir.

2004).

1.      Wrongful Termination

Defendant contends that Plaintiff cannot establish a prima facie case of age discrimination because: (1) she is not qualified for the bus driver position due to the loss of insurance coverage, and (2) she was not replaced by a younger employee.  There is no dispute that Crownover possesses the appropriate education, experience and skill necessary to perform the job, in that she drove a school bus for 25 years.  However, as Plaintiff recognizes, eligibility for insurance coverage is an essential prerequisite for the job.  Selective, not Shriver, demanded that Crownover be removed from the insurance policy.  Indeed, the record reflects that Shriver had no contact with Selective regarding the coverage decision.  Because Crownover did not qualify for the applicable required insurance coverage, she was not qualified to perform the job.  Thus, Plaintiff cannot establish a prima facie case of age discrimination.

Plaintiff does not dispute the above analysis, but instead argues that an act of the employer rendered her unqualified.  The Court cannot agree.  It was Crownover's car accident, in operating her personal vehicle, that triggered Selective's decision to remove her from the policy.  Shriver had no role in the accident or in Selective's coverage determination.  At most, Shriver merely failed to pursue ESS' offer to ask Selective to reconsider its decision regarding Crownover.  It is purely conjectural whether any such effort would have been successful as to Crownover, even though Selective did agree to reinstate Rondinelli.[2]  Plaintiff's reliance on

---

[2] It is certainly plausible that an insurer would regard careless driving which resulted in an actual car crash as more serious than a speeding ticket.  However, the Court does not reach the question of whether Crownover and Rondinelli were similarly situated.

7

*Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535 (3d Cir. 2006) and *Hugh v. Butler County YMCA*, 418 F.3d 265 (3d Cir. 2005), is misplaced because Plaintiff concedes that eligibility for insurance is a legitimate and essential job qualification.[3] Plaintiff has not introduced any evidence that substantially younger persons were permitted to drive a bus even though they were not covered by insurance. In conclusion, Defendant is entitled to summary judgment on the wrongful termination claims.

    2.    Disparate Pay

To establish a disparate pay claim under the ADEA, Plaintiff must show that younger employees were paid more for substantially equivalent work. *Tumolo v. Triangle Pacific Corp.*, 46 F. Supp.2d 410, 412 (E.D. Pa. 1999). No reasonable jury could conclude based on the record evidence in this case that Crownover was paid less due to age discrimination. The record demonstrates that Plaintiff was given the highest paying bus route and that she was the highest paid driver employed by Shriver.[4] Plaintiff's focus on the rate "per run" is misplaced. Other drivers with different routes who made more "per run" are not similarly situated, as the length of the runs, the district, and the size of the bus varied. Moreover, Crownover was able to perform two runs on Tuesdays through Fridays. There is no younger comparator who was paid more than Plaintiff. Ms. Miller, who performed the S14 bus run for the 2006-2007 school year, made $37 on Monday– exactly the same rate as Crownover. Crownover was paid $36 for this run from

---

[3] The Court does not reach the issue of whether only Crownover's immediate replacement, or all subsequent replacements, should be evaluated as a basis for drawing an inference of age discrimination.

[4] The one other driver who earned as much as Crownover was older than Crownover.

Tuesday through Friday, but she also made $24 for a second run, for a total of $60 per day during the 2005-2006 school year.[5]

Even if Plaintiff were able to demonstrate some differences in pay, the record is bereft of any evidence from which a reasonable jury could infer that the disparity was due to age discrimination. In sum, as Shriver's highest-paid driver, Plaintiff is unable to demonstrate that she was underpaid due to her age.

3. Retaliation

To establish a retaliation claim, Plaintiff must show (1) that she engaged in protected activity, (2) that she was subject to a subsequent adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse action. *Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995). Defendant contends that Crownover cannot establish the requisite causal connection. The Court agrees.

Plaintiff filed an EEOC claim on December 12, 2005 and was terminated approximately two weeks later. Often, temporal proximity will suffice to enable the factfinder to infer a causal link. In this case, however, the record demonstrates that the decision to remove Crownover from the insurance policy was made by a party who was completely unaware of the EEOC claim, namely Selective, and that the decision was made in September 2005 – three months prior to Crownover's protected activity. The only event that occurred in temporal proximity to the EEOC claim was Shriver's actual compliance with Selective's demand that Crownover be removed

---

[5]The Court notes that Miller also performed a second run on Tuesdays through Fridays during the 2006-2007 school year and received $61 per day. Plaintiff does not argue that this is a basis for her disparate pay claim.

9

from the policy. As noted, Shriver could not employ Crownover as a bus driver without the appropriate insurance coverage. Therefore, Plaintiff cannot establish that her termination was causally connected to her protected activity.

In accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION FOR SUMMARY JUDGMENT *(Document No. 26)* filed by Defendant Shriver Contract Services, Inc. is **GRANTED**. The clerk shall docket this case closed.

SO ORDERED this 15th day of January, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge


cc: Neal A. Sanders, Esquire
Email: lonas@earthlink.net

Bethann R. Lloyd, Esquire
Email: blloyd@grogangraffam.com